## BIRGE–FORBES CO. v. HEYE.†

## HEYE v. BIRGE–FORBES CO.

### (Circuit Court of Appeals, Fifth Circuit. February 17, 1914.)

### No. 2540.

1. FACTORS (§ 45*)—REIMBURSEMENT OF FACTORS FOR PAYMENTS TO BUYERS.

An agent for a seller of cotton, under the rules of a cotton exchange by which he became a guarantor to the buyers, could recover from the seller only the amount paid by him as guarantor to buyers pursuant to arbitration under the rules of the exchange, and not the amount for which he had become liable but had not paid.

[Ed. Note.—For other cases, see Factors, Cent. Dig. §§ 60, 63, 64; Dec. Dig. § 45.*]

2. ARBITRATION AND AWARD (§ 74*)—VACATION OF AWARD BY NEW AGREEMENT.

An award on the arbitration, under the rules of a cotton exchange, of disputes and controversies between a seller and buyers, was not waived or vacated by a subsequent agreement between the seller and its agent, who, under the rules of the exchange, was a guarantor to the buyers to submit the matters covered by the awards to another arbitration, which agreement was never carried into effect; it being between different parties than those to the awards.

[Ed. Note.—For other cases, see Arbitration and Award, Cent. Dig. § 342; Dec. Dig. § 74.*]

In Error and Cross-Error to the District Court of the United States for the Eastern District of Texas; Gordon Russell, Judge.

Action by Carl R. Heye against the Birge-Forbes Company. Judgment for plaintiff, and both parties bring writs of error. Affirmed.

H. O. Head and Jesse F. Holt, both of Sherman, Tex., for plaintiff in error and defendant on cross-writ.

Robert Harrison and R. M. Rowland, both of Ft. Worth, Tex., for defendant in error and plaintiff on cross-writ.

Before PARDEE and SHELBY, Circuit Judges, and GRUBB, District Judge.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
†Rehearing denied March 12, 1914.

PER CURIAM. This case is clearly stated in the oral charge given to the jury on the trial as follows:

"This case was filed by the plaintiff, Carl R. Heye, based upon the claim that he had paid out something over $76,000, or had become liable for that sum of money, on account of certain findings of the Bremen board of arbitration of the Bremen Cotton Exchange in ascertaining the differences in the staple, grade, and quantity of certain cottons sold by him as the agent of the defendant company on the Bremen market. The claims that he acted as the agent of the defendant company, and made sales of cotton between the 1st of October, 1910, and May 1, 1911. He alleges that it was agreed that the cotton he sold as the agent of the defendant company was to be sold under the rules of the Bremen Cotton Exchange, and among those rules was a stipulation that all differences as. to grade and quality were to be arbitrated by the board of arbitrators provided for by the rules which have been introduced in evidence in this case. He claims that between the dates I have indicated, viz., October 1, 1910, and May 1, 1911, something over 15,000 bales of cotton were sold by him as the agent of the defendant company to certain buyers in Bremen, Germany, and, after the sales were made, reclamations were made by those buyers, and disputes and controversies arose as to the quality, grade, and staple of the cotton, and that those disputes and controversies, under the rules of the Bremen Cotton Exchange, were submitted to the board of arbitrators; that those arbitrators acted in accordance with the rules of the Bremen Cotton Exchange and made their award; that thereafter that award was appealed from to the board of appeal, also provided for by the rules of the Bremen Cotton Exchange, and the board of appeal made its award; and that by virtue of these rules and these awards he became liable to the buyers of the cotton in about the sum of $74,333.33. He alleges that, in addition to this item of award, he paid out on the cotton so sold for the defendant company the sum of $1,730.16 for losses and deficiencies in the weight of the cotton. As far as the latter sum, $1,730.16, is concerned, which the plaintiff alleges that he paid out for losses and deficiencies in the weight of the cotton, there is no controversy whatever in the testimony. The plaintiff alleges that he paid those amounts, and there is no testimony in behalf of the defendant company contradicting the evidence of the plaintiff on that point. Therefore it would be my duty to instruct you to render a verdict for the plaintiff, Heye, for the sum of $1,730.16, being the amount of losses and deficiencies in the weights of the cotton in controversy in this suit.

"As to the other part of the controversy, the defendant, Berge-Forbes Company, claims that it is not liable to the plaintiff for the amount of the awards for the reasons set out in its amended original answer filed in this case January 6, 1913. Without attempting to make an elaborate statement of the reasons set out in the answer, the defense revolves around two propositions named in that answer. One of them is that the plaintiff, Heye, cannot recover on the awards made by the Bremen board of arbitration, for the reason that on the 27th day of January, 1911, the findings of the Bremen board of arbitration were set aside and annulled by an agreement made between the parties to this suit on that date. The defendant alleges that it became dissatisfied with the findings of the Bremen board of arbitration, and that there were various negotiations between the defendant company and the plaintiff, Carl R. Heye, prior to the 27th of January, 1911, which culminated on that date in the agreement which has been read in evidence, and which is attached as an exhibit to the answer of the defendant company, and the defendant company claims that that agreement amounted in law to a setting aside and annuling of the findings of the Bremen board of arbitration.

"It is in evidence that the agreement of January 27, 1911, was never carried out. The arbitrators, who were agreed upon in that agreement of January 27, 1911, refused to act because of the fact, as is alleged, that they claimed that there was not sufficient data upon which they could reach a conclusion at Liverpool, the place where the arbitration provided for in the agreement was to occur.

"There was some testimony one way and the other as to whether the plaintiff or the defendant company was chargeable with the blame for not carrying

212 F.—8

out the agreement of the 27th of January, 1911, but I do not believe there is any testimony sufficient upon which to base a finding that either the plaintiff or the defendant company was at fault for failing to carry out that agreement. In other words, it was an agreement attempted to be made to arbitrate which was never executed, and this through no fault of either of them, as the court believes from the testimony.

"The question for the court to decide is whether the agreement of January 27, 1911, amounted to an abandonment and annulment of the findings of the board of arbitration and the appeal board of arbitration.

"The court has come to the conclusion in this case that the plaintiff's cause of action rests upon the finding of the board of arbitration provided for by the rules of the Bremen Cotton Exchange; that that finding by the board of arbitration constituted his cause of action. If the Bremen board of arbitration had found nothing in favor of the parties to whom the cotton was sold, and who have claims for reclamation, then plaintiff would have nothing to pay, and would have no cause of action against the defendant company, so that the basis of this suit, which constitutes his cause of action, is that he had been compelled, under the rules of the Bremen Cotton Exchange, to pay out certain sums found against the defendant company by the board of arbitration of that Cotton Exchange.

"Now when, for any reason, the agreement of January 27, 1911, failed to become operative, it remitted the plaintiff to his original cause of action, which was the finding of the Breman board of arbitration, and upon that he sues, and therefore the court is of opinion that the agreement of January 27, 1911, while it would have been effective, if it had been carried out, but not having been carried out, and without the fault of either party, the plaintiff was remitted to his original cause of action, which is the finding of the board of arbitration of the Bremen Cotton Exchange.

"The other proposition that was raised was that the rules of the Bremen Cotton Exchange were modified by the instructions given by the defendant company on the 21st of August, 1908, together with the reply thereto made by the plaintiff on the 14th of December, 1908, and, that the record may be as complete as possible on this particular phase of the case, I call the attention of the jury to the statements contained in the letter which the defendant company wrote to the plaintiff on the 21st of August, 1908, and which letter I quote in full as follows: 'Replying to your of the 3d inst., as you seem to think you will be able to do a large business for us, and as our relations have always been very pleasant, we will drop the question of reducing expenses by employing an agent for the present, and continue our present relations for the coming season. However, it must be understood that you will push our sales as much as possible. We would like to have all sales made with the understanding that arbitration differences for grades and a staple will be those in effect (the actual differences made on cif and six cotton sold by us) at the time of the sale instead of the last day of landing.'

"The defendant company had the right to ingraft that change on the rules of the Bremen Cotton Exchange so far as the liabilities and obligations of the plaintiff in this case were concerned, if the proposition in that letter matured into a contract (that is, if the minds of the parties met, as to that particular phase which the defendant company sought to ingraft on the rules of the Bremen Cotton Exchange), so that the court must look to the testimony in the record to determine whether the minds of the parties met and agreed upon any change of the rules of the Bremen Cotton Exchange. Now the letter of the defendant company of August 21, 1908, reached the plaintiff, and on December 14, 1908, the plaintiff replied to it, and I now quote his reply: 'Thanking you for your favor of August 21, I am glad to note that you are willing to continue our agreeable relations and beg to assure you once more I always shall use all ability and activity to push business, and to make same as extensive and satisfactory as possible. I note you wish it to be understood that all arbitrations buyers should demand are to be based on those grades and staple differences in force on date of sale, and I shall govern myself accordingly in future. However, I find it necessary to mention I fear we often shall meet some objections as to this condition, for Bremen buyers principally wish to buy exactly on Bremen rules. They are hard to be had for

any exceptions; nevertheless, I shall try and also in this point do my best for you. If, however, later on the resp. conditions shall prove to hinder business, I shall let you know.'

"The statement which the plaintiff appears to acquiesce in and agree to be bound by is the statement contained in this letter that 'all arbitrations buyers should demand are to be based on those grade and staple differences in force on date of sale, and I shall govern myself accordingly in future.'

"It is conceded in the argument in the case by the attorneys on both sides that subsequent to the writing of the letter of December 14, 1908, the arbitration buyers did demand were based on those grade and staple differences in force on the date of the sale, and therefore whatever there was in the proposition contained in the letter of August 21, 1908, by the plaintiff has been carried out and complied with in the transactions which occurred between the parties subsequent to that date, and there is nothing in the finding of the Bremen board of arbitration of the Bremen Cotton Exchange which contravened that particular phase which the defendant company proposed and which the plaintiff accepted. They went along subsequent to that time and arbitrated the differences under the rules of the Bremen Cotton Exchange, simply asking that one modification as contained in the request of the defendant company of August 21, 1908, and answered in the letter of the plaintiff of December 14, 1908.

[1] "This being so, the court is of opinion that the plaintiff in this case is entitled to recover, not only the amount paid for the deficiencies in weight, but for whatever amount he paid as the guarantor of the defendant company's contract of sale with the buyers at Bremen. There is an issue in the case as to whether the plaintiff should recover the amount of $85,000, being the total amount of money which he paid and claims to be liable for, plus the seventeen hundred and some odd dollars which he paid as deficiencies in weight, or whether the liability of the defendant company to the plaintiff is covered by the amount of money which he actually paid out on account of those contracts as such guarantor and surety.

"The court is of opinion that the measure of liability at present which the defendant company is under to the plaintiff is the amount of money he actually paid out, and not the amount of money which he may be liable to pay, but which has not yet been paid. It is undisputed that the amount of money he has paid out on account of the finding of the board of arbitration of the Bremen Cotton Exchange, and which has been in evidence to you, is $36,610.96, and therefore I direct the jury to return a verdict in favor of the plaintiff for the sum of $1,730.16 for deficiencies in weight, etc., of the cotton, and the further sum of $36,610.96 being the amount of the award of the board of arbitrators of the Bremen Cotton Exchange which the plaintiff has paid."

[2] As to the contention stressed in this court that the awards made under the rules of the Bremen Cotton Exchange were waived and vacated by the subsequent agreement to submit matters covered by said awards to another arbitration, it is only necessary to point out that the awards under the rules of the Bremen Cotton Exchange were between Birge-Forbes & Co. and the various purchasers of cotton, and that the subsequent agreement to arbitrate was between different parties, to wit, Birge-Forbes & Co. and their selling agent, Carl R. Heye.

We find no error in the charge given by the trial judge, nor reversible error in any of the rulings of the court as to the admission of evidence, and therefore that none of the assignments of error are well taken.

The judgment of the District Court is affirmed on both writs; the costs of this court, including the transcripts, to be equally divided.